JOHN QUIN *vs.* BAY STATE DISTILLING COMPANY.

Middlesex.     March 14, 1898. — May 20, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Contract — Findings of Fact — Auditor's Report — Right to terminate Contract — Action — Interest.*

Where requests for rulings, which are refused, are founded upon an assumption that certain facts are proved in the case, if there was any evidence which would warrant a different finding of the facts, it must be assumed, upon exceptions, that they were so found.

An auditor's report in favor of the plaintiff is enough to warrant a finding of the judge for the plaintiff, and his refusal to give rulings requested by the defendant, unless the findings in the report or the other facts stated are necessarily inconsistent with the refusal and the result.

A contract between A. and B., by which A. is to furnish labor and materials and

superintend work in the erection and repair of buildings for B. so long as both parties shall see fit to continue the arrangement, A. being at no time under a contract to erect a particular building and B. being at no time bound by contract to permit him to complete a particular building, is terminable by either of them at pleasure, and A., having elected to terminate it, may immediately maintain an action upon an account annexed for that which is due him, including merchandise which he has bought and furnished, but has not paid for, with interest from the date of the writ; and the contention that he cannot recover for his services because he failed to render a true account is disposed of by the finding of an auditor that he was not bound by his contract to do any more than he did.

CONTRACT, upon an account annexed, for labor and materials furnished in the erection and repair of buildings on land of the defendant in Cambridge. Writ dated January 22, 1895. Trial in the Superior Court, without a jury, before *Richardson, J.*, who allowed a bill of exceptions, in substance as follows.

The case was referred to an auditor, who found and reported the following facts.

The plaintiff is a carpenter and builder, and has been engaged in that business from thirty-five to forty years. He was employed by one Sortwell in Cambridge for fifteen or twenty years in building houses for him, and doing his work in connection with the distillery business, which he carried on in the location of the defendant company, and to which company he sold the property now owned by it. After this conveyance the defendant determined to enlarge its works and increase its business, and it was in the enlargement of the plant by repairs and by the erection of new buildings that the labor was performed and the materials furnished which are the subject of this action. The work was performed and the materials furnished between October, 1893, and January, 1895. The account annexed to the original declaration commenced in October, 1894, and contained debit items down to and including January, 1895, but no credit items, and claimed an indebtedness by the defendant to the plaintiff of $17,979.54.

Early in the hearing it appeared that there had been labor and materials furnished by the plaintiff to the defendant running over a period of about one year prior to the date of the first item in his original account annexed, and that large sums of money, aggregating more than $50,000, had been paid thereon; and it was discovered that no just accounting could be had be-

tween the parties without going back to the examination of the work, and taking the amount of all the labor performed and materials furnished, and also an account of all moneys paid by the defendant to the plaintiff thereon ; and it was agreed by the parties that the plaintiff should amend his declaration so as to cover all items from the beginning of the work, on or about November 1, 1893. Thereupon the plaintiff filed an amended account annexed, covering the different items of labor and materials from November 1, 1893, and embracing 1,857 items, but without any items of credit.

The case for the plaintiff was opened, and the testimony proceeded through several hearings upon the theory that the plaintiff was to do this work and render a monthly account to the defendant for merchandise purchased and labor performed at the cost price, the plaintiff to receive pay by the day ; and the items in the account annexed, so far as they were proved item by item, were proved upon that theory.

After hearings upon the first amended declaration it was discovered that the charges made for labor and materials in such amended declaration were not made upon that basis, but were made upon the basis of an ordinary jobber's contract; that is, the plaintiff had charged the profit upon the lumber and materials that he had purchased, and also a profit on the labor furnished by him. It then appeared that the original understanding and contract, so far as there was any between the parties, was that the work should be done on that basis. It appeared subsequently that that understanding or contract was modified verbally between one Sibley, representing the defendant, and the plaintiff, and that such modified contract should date from the beginning of the work. " This modification left the contract in substance and legal effect that the plaintiff, under the directions of Mr. Sibley and an architect whom the defendant had employed (Mr. Breden), should go ahead and make such repairs and erections as they should order at cost price, and that he, the plaintiff, should have a commission upon the expenditures for his services. This commission was left indefinite, and never agreed upon in terms, except that the plaintiff, after several conversations with Mr. Sibley, told him that he, the plaintiff, thought that ten per cent upon the expenditures would be

a fair compensation. To this Mr. Sibley neither assented nor dissented, and thereafter the plaintiff proceeded with his work with no other or further understanding as to compensation, and it is upon such a contract between the parties that this case was finally presented to me."

This required a recasting and reforming of the entire account, which was done, resulting in a second amended account annexed. Hearings were had upon this account, until it was discovered that a large number of items covering the whole period, notably labor items, were still charged upon a different basis; and a third amendment, called Schedule A, was thereupon made. Further hearings were had, and it was discovered that the plaintiff had not given the defendant the benefit of discounts allowed on the purchase of materials, and that there were a large number of unexplained charges not in conformity with the agreement. By the auditor's direction a fourth amendment, called Schedule B, was thereupon prepared, showing all such discounts and charges. The case then proceeded for four days, when the auditor found the account so incorrect that he suspended the hearings until all the accounts should be re-examined and restated by competent persons. The plaintiff's son, who had kept the books, and the stenographer, who had reported the evidence, performed this work between March 20 and November 10, 1896, and as a result a revision of the items in the second amended declaration was presented, giving a classification of the accounts.

Subsequently it was discovered that certain items for work and materials included in the second amended declaration were furnished on and after the date of the writ, and it was agreed that a schedule of those items should be made, which was done. These items were disallowed by the auditor.

Afterwards cross-examination elicited the fact that a large part of the materials for which the plaintiff seeks to recover had not been paid for by the plaintiff prior to the date of his writ, and it was agreed that a schedule of those items should be prepared, which was done, and the same was presented to the auditor and admitted in evidence. These items amounted to $9,669.10, and were allowed. This was called Schedule C.

The plaintiff was familiar with Sortwell's business, and to a

certain extent with the buildings necessary for the transaction of such business. He was found there by the defendant when it purchased the property, and so far as appears was the only person who was well acquainted with the property, and to a certain extent with the needs of the business. He retained his position, and when the defendant determined to enlarge its plant he was given such instructions as would imply to his mind that he was to continue practically the same as he had been doing in the employ of Sortwell; at least, so he understood it. When the change in the form of the employment was made, a reason given was that Sibley did not like the appearance of a large amount of bills coming from the superintendent of the company in his name. It was distinctly stated that the work was to be done at cost by the plaintiff. The plaintiff understood from that that he was to charge the ordinary contractor's profit upon the labor of his men, and the cost to him of his merchandise. He understood also that he was to hire carpenters and laborers, and purchase the necessary materials and become responsible for them, the same as under the former arrangement.

" From all the evidence I find that this contract was to make such repairs and erect such buildings as the defendant or its agents, duly authorized, should instruct the plaintiff to prepare and erect; that he should employ labor and furnish the materials at cost, and that this means that he should charge no profit thereon, and that he should receive some suitable sum for superintendence of this work.

" From all the testimony I find that it was understood between the parties that he should receive ten per cent of the amount expended for his services as superintendent in the repair and erection of the works, and that this sum included bookkeeping, whether done by himself or by any other person."

The auditor, after making certain deductions for errors and overcharges, found that the plaintiff was entitled to recover $14,381.02, with interest from the date of the writ.

In addition to the facts stated in the auditor's report, the following facts appeared.

From bills introduced in evidence, and the schedules annexed to the auditor's report, it appeared that the bills rendered under date of September 1, 1894, were a revised statement of accounts

covering all transactions prior to that date. The accounts rendered thereafter by the plaintiff to the defendant on or about the first day of each month covered the transactions during the preceding month. These accounts, so far as they covered the expenditures for labor or articles from the plaintiff's own shop, and similar purchases of merchandise, were rendered in the name of the plaintiff to the defendant. So far as these bills covered merchandise furnished in large quantities, as lumber or bricks, the bills were rendered to the defendant in the name of the dealer who furnished such materials.

At the time of the commencement of this action, no bill whatever had been rendered for labor or materials furnished after December 31, 1894. It also appeared that bills for all the aforesaid merchandise were rendered to the plaintiff, with a few exceptions, mostly of small amount. The first account rendered to the defendant for the plaintiff's services was rendered after the date of the writ.

The original declaration corresponded with the accounts rendered by the plaintiff to the defendant, covering items from October, 1894, to December 31, 1894. The first amended declaration corresponded with the revised accounts rendered by the plaintiff from September 1, 1894, after the modification of the contract, and those subsequently rendered to the defendant from time to time up to January 1, 1895. The first amended declaration differed from the original declaration only in that it covered also items from the beginning up to the date of the first item in the original declaration.

It appeared that the account, so far as rendered prior to the commencement of the suit, and as set forth in the original and first amended declarations, was not a correct account of the labor and materials furnished the defendant, and that the extensive accounting undertaken before the master, and at his suggestion, by the accountants, was necessary to ascertain the actual cost of the labor and materials furnished to the defendant by and through the plaintiff.

The second amended declaration, and the several schedules amendatory thereof, were designed to present the corrections of the original bills so as to conform with the facts as actually found; but the second amended declaration and the amendatory

schedules, like the first amended declaration, were found to state incorrectly, in very many particulars, the cost of labor and materials.

Upon the facts found by the auditor, and the additional facts appearing at the trial as above stated, the defendant requested the judge to rule as follows:

"1. The action cannot be maintained, having been brought prematurely.

"2. The plaintiff cannot recover on the items of merchandise which were not paid for (if at all) until after the date of the writ, appearing by Schedule C, revising second amended declaration and aggregating $9,669.10.

"3. If the plaintiff could otherwise recover on the items contained in Schedule C, revising second amended declaration, aggregating $9,669.10, they cannot be recovered under this declaration, which contains only a count upon an account annexed.

"4. The plaintiff cannot recover for his services in this action, because it was commenced before the work had been completed or abandoned, and also because the plaintiff had not prior to the date of the writ rendered a proper account, and made a demand for payment on account of services.

"5. The plaintiff cannot recover for his own services in this action, because he did not prior to the date of the writ render a proper account of the money received from the defendant, and of the indebtedness incurred.

"6. Even if the court should find that the compensation agreed to be paid to the plaintiff was ten per cent, he cannot recover the full amount, because it appears from the auditor's report and the undisputed testimony that it was a part of the duty assumed by the plaintiff to keep and render proper accounts, and this had not been done prior to the accounting before the master.

"7. The plaintiff cannot recover interest on the amount found to be due from the date of the writ, because, as appears by the auditor's report and the undisputed testimony, it was a part of the duty assumed by the plaintiff to keep and render proper accounts, and the plaintiff had not rendered any proper account showing moneys due, and the extensive accounting before the

auditor was necessary in order to ascertain the amounts actually due the plaintiff."

The judge declined to give any of the rulings requested, and ruled that the plaintiff could not recover for any services rendered or goods sold after the date of the writ, and found for the plaintiff in the sum of $16,684.28, being the amount found by the auditor, and interest thereon to the date of the finding.

The defendant alleged exceptions.

*L. D. Brandeis,* for the defendant.

*W. H. Atwood,* for the plaintiff.

KNOWLTON, J.   The exceptions in this case are all to the refusal of the judge to make certain rulings requested by the defendant, and to his finding for the plaintiff.   Most of these requests are founded upon an assumption that certain facts are proved in the case.   If there was any evidence which would warrant a different finding of the facts, it must be assumed that they were so found.   The auditor's report in favor of the plaintiff is enough to warrant the finding of the judge and his refusal to give the rulings requested, unless the findings in the report or the other facts stated are necessarily inconsistent with the refusal and the result.

In one part of the report the contract on which the action is founded is stated as follows: " This modification left the contract in substance and legal effect that the plaintiff, under the directions of Mr. Sibley and an architect whom the defendant had employed (Mr. Breden), should go ahead and make such repairs and erections as they should order at cost price, and that he, the plaintiff, should have a commission upon the expenditures for his services.   This commission was left indefinite, and never agreed upon in terms, except that the plaintiff, after several conversations with Mr. Sibley, told him that he, the plaintiff, thought that ten per cent upon the expenditures would be a fair compensation.   To this Mr. Sibley neither assented nor dissented, and thereafter the plaintiff proceeded with his work with no other or further understanding as to compensation, and it is upon such a contract between the parties that this case was finally presented to me."   In another part of the report he says: " I find that this contract was to make such repairs and erect such buildings as the defendant or its agents, duly authorized,

should instruct the plaintiff to prepare and erect; that he should employ labor and furnish the materials at cost, and that this means that he should charge no profit thereon, and that he should receive some suitable sum for superintendence of this work." We understand that this was an arrangement to furnish labor and materials and superintend work in the erection and repair of buildings so long as both parties should see fit to continue the arrangement, and that the plaintiff was at no time under a contract to build a particular building, and that the defendant was at no time bound by contract to permit him to complete a particular building. The plaintiff had been for a long time continuously in the service of the defendant's predecessor in business, and his arrangement with the defendant apparently was for a continuous service. So far as there was a contract at all, it ran into the future for an indefinite period, applying not to any particular buildings, but to such buildings as the plaintiff might be directed to work upon. It cannot be held to have bound the parties to continue their relations forever. It was, therefore, terminable by either of them at pleasure. The plaintiff, having elected to terminate it, could immediately maintain an action for that which was due him, and the judge rightly refused to rule that the action was prematurely brought.

There was no such express contract as would prevent the plaintiff, after electing to terminate the arrangement, from maintaining an action on an account annexed, and the defendant's request, founded on the form of the declaration, was rightly refused. *Morse* v. *Potter*, 4 Gray, 292. *Charman* v. *Henshaw*, 15 Gray, 293. *Morse* v. *Sherman*, 106 Mass. 430, 432. *Lovell* v. *Earle*, 127 Mass. 546.

Under this agreement the plaintiff was entitled to recover as well for merchandise which the plaintiff bought and furnished, but had not paid for, as for that which he had paid for.

The defendant's contention that the plaintiff cannot recover for his services because he failed to render a true account is disposed of by the finding of the auditor that the plaintiff was not bound by his contract to do anything more than he did.

There is nothing in the case to take it out of the ordinary rule that, where the debt was not payable at an earlier time,

interest upon the amount found due is to be allowed from the date of the writ. *Dodge* v. *Perkins*, 9 Pick. 368, 388. *Foote* v. *Blanchard*, 6 Allen, 221.          *Exceptions overruled.*