RISLEY et al. v. CITY OF UTICA et al.

CITY OF UTICA v. CONSOLIDATED WATER CO. OF UTICA et al.

(Circuit Court, N. D. New York. June 7, 1910.)

1. COURTS (§ 414*)—FEDERAL COURTS—DISMISSAL FOR WANT OF JURISDICTION.
   Where the Circuit Court can maintain jurisdiction, if at all, under Act Cong. March 3, 1875, c. 137, § 1, 18 Stat. 470 (U. S. Comp. St. 1901, p. 508), giving the court original concurrent jurisdiction with the state courts of civil suits, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000, and arises under the Constitution or laws of the United States, if it appears plainly, on complainant's own showing that the amount in controversy does not exceed the specified sum, or that complainants have not been deprived of their property without due process of law, it is the duty of the court on its own motion, even, to dismiss the suit under section 5, providing that if, in any suit commenced in a Circuit Court, it shall appear to the satisfaction of such court at any time after the suit has been brought or removed thereto that the suit does not really involve a dispute properly within its jurisdiction, the suit shall be dismissed.

   [Ed. Note.—For other cases, see Courts, Dec. Dig. § 414.*

   Jurisdiction of Circuit Courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

2. MUNICIPAL CORPORATIONS (§ 961*)—CONSTITUTIONAL LAW (§ 283*)—LEGISLATIVE POWER.
   Where a state creates municipal corporations, it may authorize them to do things necessary for their welfare and existence, to preserve prop-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

erty from loss or destruction by fire, and to assess, levy, and collect taxes to pay the expense of so doing, and may go to any reasonable extent within the limit of the state Constitution, so long as the United States Constitution is not violated, and Laws New York 1867, c. 393, authorizing the city of Utica to contract with a waterworks company for a supply of water for extinguishment of fires, to fix and agree upon the sum to be paid therefor, such sum to be added each year to the tax authorized to be raised by the city charter and collected therewith, and to make it obligatory on the company on the contract to furnish water to the city for extinguishing fires, to extend its mains on such streets as the council should designate, and provide suitable reservoirs to constantly supply the city with sufficient water to extinguish fires, was a valid exercise of such power, being general in application, including all fires on all property within the city, and not authorizing taxation by illegal or arbitrary methods nor without due process of law.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 961;* Constitutional Law, Cent. Dig. §§ 891, 892, 904–906; Dec. Dig. § 283.*]

3. COURTS (§ 263*)—FEDERAL COURTS—JURISDICTION.

When suit is brought in the United States Circuit Court, and both state or local questions and federal questions are involved, the federal questions give jurisdiction, assuming that the amount involved is sufficient, and the federal court may decide the case on the federal questions or on the local questions alone, if the latter dispose of the whole controversy.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 799, 800; Dec. Dig. § 263.*

Jurisdiction in cases involving federal questions, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purch. Co. v. Boston & M. C. C. & S. Min. Co., 35 C. C. A. 7.]

4. WATERS AND WATER COURSES (§ 200*)—CONTRACTS—RIGHT TO TERMINATE—NOTICE.

A contract between a city and a water company fixed no time for termination thereof, but provided that the city should pay at the rate and on the basis stated, so long as the company should supply water. Held, that the city could terminate the contract on giving due and reasonable notice of its election so to do.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 200.*]

5. SPECIFIC PERFORMANCE (§ 32*)—CONTRACTS ENFORCEABLE—CONTRACT NOT MUTUALLY ENFORCEABLE.

The contract not being mutually enforceable, neither party could compel specific performance for all time.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 89–99; Dec. Dig. § 32.*]

6. COURTS (§ 282*)—FEDERAL COURTS—JURISDICTION—FEDERAL QUESTION.

A city given by the state the power to contract for a supply of water for extinguishment of fires, and to tax property in the city to pay therefor, made and continued a contract which was unreasonable, and provided for an excessive compensation to the water company. The state itself had not approved or sanctioned the contract by its legislative, executive, or judicial authority. Held, that any illegal act of the city under the contract was done without the authority of or contrary to the state law, and persons who had paid the taxes could not seek equitable relief in the federal court, on the ground of deprivation of property without due process of law.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820–824; Dec. Dig. § 282.*]

7. MUNICIPAL CORPORATIONS (§ 956*)—POWERS—TAXATION.
    The power to tax is inherent in a municipal corporation duly created, whether expressly granted or not.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2010–2013; Dec. Dig. § 956.*]

8. COURTS (§ 328*)—FEDERAL COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.
    The amount involved in a suit is not measured by the actual recovery, but by the amount claimed, provided it is claimed in good faith, and is not merely a colorable claim to give the court jurisdiction.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 890–896; Dec. Dig. § 328.*]

9. COURTS (§ 328*)—FEDERAL COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.
    Several taxpayers cannot unite in one suit, each having a separate demand to recover back the taxes paid by them so as to confer jurisdiction on the Circuit Court of the United States by aggregating their demands to make the amount in controversy within the cognizance of such court; each person having a separate and distinct demand in which the others are in no way interested.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 891; Dec. Dig. § 328.*]

10. MUNICIPAL CORPORATIONS (§ 977*)—SUIT TO RECOVER TAXES—LACHES.
    Laches in seeking and enforcing a remedy would bar recovery of taxes paid for compensation under a contract between a city and water company, from about 1900, where suit was not brought for nearly 10 years.
    [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 977.*]

Bill by Edwin H. Risley and others against the City of Utica, the Consolidated Water Company of Utica, and others, in which the city filed a cross-bill. On motions of the water company to dismiss and of complainant Risley to be allowed to discontinue. Motions allowed.

Risley & Love, for complainants in original suit.

Thomas S. Jones and Charles E. Snyder (William H. Corbin, of counsel), for Consolidated Water Co.

George C. Morehouse, for City of Utica.

RAY, District Judge. All the parties of these suits are citizens of the state of New York, and this court has and can maintain jurisdiction, if at all, under Act Cong. March 3, 1875, c. 137, § 1, 18 Stat. 470 (U. S. Comp. St. 1901, p. 508), which provides:

"The Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arises under the Constitution or laws of the United States * * * or in which there shall be a controversy between citizens of different states."

It is contended that the amount in controversy does exceed the sum of $2,000 exclusive of interest and costs, and that the suit arises under the Constitution of the United States and presents a federal question or questions, in that the rights of complainants guaranteed by the fourteenth amendment have been and are being violated. Said amendment provides:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The contention of the complainants is that the complainant parties have been and are being deprived of their property by unjust and unlawful taxation by instrumentalities of the state without due process of law in violation of the constitutional provision referred to.

It must now appear by some evidence that the amount in controversy does exceed the sum of $2,000 exclusive of interest and costs and, also, that the complainants by some act of the state have been and are being deprived of their property, by means of taxation, without due process of law, or this court has no jurisdiction; and when the absence of this fact or these facts appear plainly and conclusively on the complainants' own showing, if they do, it is the duty of the court, on its own motion, even, to dismiss the suit.

The act of Congress provides:

"Sec. 5. That if in any suit commenced in a Circuit Court * * * it shall appear to the satisfaction of said Circuit Court at any time after such suit has been brought or removed thereto that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, * * * the said Circuit Court shall proceed no further therein but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just."

There are many cases holding it to be the duty of the court under this statute to dismiss when want of jurisdiction in the Circuit Court appears. It would, it seems to me, be folly to put the parties to the delay and expense of a further hearing when this fact appears on the complainant's own showing. Why a party defendant should be put to his defense when no case of which the court has jurisdiction has been made against him, or when no equity or ground of relief is shown, is a proposition not easily comprehended. Allegations in a bill of complaint are one thing; proof to sustain them is quite another. The allegations of this bill as now framed—and it is quite different from the one first filed—have been fully considered. Risley v. City of Utica (C. C.) 173 Fed. 502.

The city of Utica is one of the cities of the state of New York of the second class existing under the provisions of chapter 18, Laws 1862, and the acts amendatory thereof and supplementary thereto. The common council of said city has the general power "to establish, make and regulate public wells, acqueducts and reservoirs of water for the convenience of the inhabitants of the city and its protection against fires, and to prevent the unnecessary waste of water." The city has no waterworks or reservoirs of its own and depends for its supply of water for domestic and all public uses, including the extinguishing of fire, on the Consolidated Water Company of Utica. That company came into existence in this way: Pursuant to chapter 154, Laws N. Y. 1848, the Utica Waterworks Company was incorporated. The West Canada Waterworks Company was organized in May, 1898. In November, 1899, the defendant company was organized, and thereafter the other companies named sold, assigned, and transferred all

their properties and property rights to the Consolidated Company. I do not find any evidence that these transfers were made with bad motives, or for illegitimate purposes, or for the creation of a monopoly, or to enable said Consolidated Company to impose upon the taxable inhabitants of said city illegal charges or taxation, or to confiscate property. There are no facts proved from which these conclusions or similar ones can legitimately be drawn. So far as appears, it was a business proposition entered into in good faith with the expectation, undoubtedly, that the company would make money or obtain a fair return on the money invested. I find no federal question presented by evidence under this feature of the bill. It is claimed on the one hand, and denied on the other, that the contract hereafter referred to was assigned and transferred to the Consolidated Company by the Utica Waterworks Company, and assumed by it, and that the parties have been acting under it for many years last past. Whether or not it was assigned or capable of being assigned is a local and state, not a federal, question.

By chapter 393, Laws N. Y. 1867, the common council of the city of Utica was expressly authorized and empowered to make a contract with the said Utica Waterworks Company: (1) For a supply of water for the extinguishment of fires in said city; (2) to fix and agree upon the sum to be paid annually therefor; (3) said sum so fixed to be added each year to the tax authorized to be raised by the city charter of the city and collected therewith and by the same power and authority. The act made it obligatory on the company, when such contract was made, to: (1) Furnish water to said city of Utica for the purpose of extinguishing fires; and (2) to lay and extend its pipes and conduits on such streets as the common council should designate; and (3) provide suitable reservoirs to constantly supply said city with sufficient water for the said purpose of extinguishing fires. This act of the Legislature of the state of New York, it will be noted, authorized a contract between the city of Utica by its common council and the Utica Waterworks Company; the Consolidated Company not being in existence at that time. I can discover nothing in this act beyond the power of the state, by its Legislature, to do. Where a state creates municipal corporations, cities and villages, it has the power, clearly, to authorize and empower them to do the things necessary for their welfare and existence; to guard its people against contagious diseases; to lay out and improve streets and avenues for public travel; to prevent crime against person and property; to preserve public and private property from loss or destruction by fire; and to assess and levy and collect taxes to pay the expense of so doing. The Constitution of the state may limit the exercise of these powers by the Legislature; but unless it does the Legislature may go to any reasonable extent in these directions so long as the Constitution of the United States is not violated, as no state may "deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Should a state assume to deprive one or more persons of their property, under the guise of taxation or otherwise without due process

of law, it would violate the mandates of the federal Constitution, and one complaining of the acts and injured thereby would have the right to seek and obtain redress in the courts, and, in so doing, a federal question would be presented, and the federal courts would have jurisdiction of the case. The state, having created the city of Utica, had the right to authorize it to protect the property of its citizens against loss or destruction by fire for the common good and welfare and to tax the taxable property of the residents of the city for the purpose of defraying the expense of so doing. The act of the Legislature of the state of New York referred to does not say in terms that the taxing power conferred shall be exercised by due process of law; but it does not authorize its exercise by illegal or arbitrary methods, or without due process of law. It does not authorize the taxation of one person and the exemption of others, similarly situated, for the purposes mentioned, but authorizes the taxation of all. It does not limit the supplying of water for the extinguishing of fires to one section of the city, or to any one or more classes of property, but is general in application and includes all fires and all property within the city. The water company is to lay and extend its pipes and conduits in such streets as the common council shall designate, but this was done to give the city control over its streets and avenues, the tearing up, etc., of streets, and not for the purpose of authorizing it, by its common council, to obtain a supply of water for one street and the extinguishment of fires on that street and deny it to others having need therefor and tax those denied protection for the benefit of favored streets or individuals. The act cannot be read in any such light or given any such construction. That the act of the Legislature referred to is not violative of the Constitution of the United States is beyond question, and, indeed, the acts complained of in the bill of complaint and alleged to be illegal are stated by the complainants to have been done, not by virtue of and pursuant to said act, but in violation thereof and contrary thereto.

· Suppose that the Utica Waterworks Company could not assign to the Consolidated Company its contract with the city of Utica, and that no legal or valid assignment of it has been made, what is the situation? Both parties have recognized it as a valid, legal, and subsisting contract between them for eight or more years, and have acted under it; the city taking and using the water of the Consolidated Company for fire and other purposes, ascertaining the compensation to be paid in the mode and manner specified in the contract and levying and collecting taxes as it does other taxes to pay for such water, and the company on its part laying and extending mains and conduits and furnishing water as demanded and also presenting bills and receiving pay for the water on the basis fixed by the contract made by the city and Utica Waterworks Company. Clearly here has been the mutual recognition of a contract subsisting between the city and the Consolidated Company, and in the absence of fraud, of which there is no proof, or of a mutual mistake of fact, of which there is no evidence, as all the facts have been well known, the city can recover nothing that has been paid, for it has been paid voluntarily in recognition of its obligation to pay, and it cannot refuse or escape liability to pay what it has impliedly

agreed to pay for the water furnished by the company and accepted and used by the city. If the written contract was not assignable and is not binding as a written contract between the city and Consolidated Company, still it is evidence of what the contract has been from year to year, for both said named parties have recognized its terms as measuring their rights and liabilities as between themselves. The Consolidated Company insists that it was and is assignable, and that it was duly and lawfully assigned to and assumed by it and binds the city as much as though the Consolidated Company had been named in the act of the Legislature authorizing a contract with the Utica Water-works Company and had executed and signed the contract originally or when made. If the city denies this position of the Consolidated Company, which it has not done by any act or acts until it filed its cross-bill of complaint in this suit, it may repudiate the said written contract as a valid and subsisting contract, give notice that it will not pay according to its terms or accept water under it, and refuse to pay in the future, and thus drive the Consolidated Company into a suit in the proper tribunal to enforce the provisions of the said written contract. Such a suit would involve no federal question and would not be one of federal cognizance. It could assume two aspects, one to recover the price agreed to be paid for water furnished, the amount of recovery to be measured in a certain way as specified in such contract, and the other for the specific performance of the contract, or one of that nature. It would be a local and a state question of which the state courts would have full and complete jurisdiction, but one of which the federal courts would have no jurisdiction for the reason there would be no diversity of citizenship, and there could be no claim that any person had been or was being deprived of property without due process of law or denied the equal protection of the laws by the state of New York.

How can the city of Utica come into this suit as a complainant in the federal court and ask to have it determined that a written contract which it has always recognized as a valid and subsisting contract between it and the Consolidated Company, and under the terms of which it is still acting, was not assignable, is not owned by that company, and not binding on the city? Does the city of Utica present any federal question? Has the state done any act to deprive it of its property or any part of it without due process of law, or any act to deprive its citizens of their property in any such way? It is the city of Utica by its common council and other officers that assesses, levies, and collects the taxes to pay the water company. If it has no power granted to it by the state so to do, its officers are mere wrongdoers and are violating the laws of the state of New York, acting in opposition thereto, and should cease its unlawful acts. If the state has granted to it the power to make a contract for a supply of water for the extinguishment of fires, and it has made none, it should do so. If it has made one, it should live up to it. If it has made one that ought to be ended or canceled for any reason, let the city summarily end it and pay damages, if any are awarded, or appeal to the state courts for appropriate relief. If the city has made a contract the terms of which are not authorized or permitted by any law of the

179 F.—56

state, such contract is void or voidable. As I have before. stated, the act of the Legislature of the state of New York which authorized a contract between the city and the Utica Waterworks Company does not violate the Constitution of the United States or authorize the common council of the city of Utica so to do. The cross-bill of the city and the proofs presented under it and in support thereof present no federal question; that is, the city makes no case for equitable relief of which the Circuit Court of the United States has jurisdiction.

Do the other complainants present such a case on the proofs; that is, one showing jurisdiction in the Circuit Court of the United States? If they do, or if either of them does, then, perhaps, the city may sustain its cross-bill, if it presents any case at all calling for or warranting any relief inasmuch as it is a party defendant, and the court, having jurisdiction, may settle the whole controversy, the state or local questions as well as the federal questions. When a suit is brought in the Circuit Court of the United States, and both state or local questions and federal questions are involved, the federal questions give jurisdiction, assuming that the amount involved is sufficient, and the federal court may decide the case on the federal questions or on the state or local questions alone if the latter dispose of the whole controversy. Siler et al. v. Louisville, etc., 213 U. S. 175, 29 Sup. Ct. 451, 53 L. Ed. 753. But when a federal question is found in a bill, it must be set up in good faith, and not be merely colorable to give the court jurisdiction. If it is merely colorable, it is the duty of the court to dismiss the bill. Now when the proof of the complainants is in and before the court, if it affirmatively appears that no federal question is involved in the suit, that the questions involved are purely state or local, it is the duty of the court to dismiss the suit.

Now suppose that the common council of the.city of Utica has assessed and levied and collected a tax from year to year to pay the sum agreed to be paid by the contract mentioned for water for the extinguishment of fires in said city; such compensation being measured as therein provided, and that such levy and collection of such tax was not authorized by the law of the state of New York or was contrary thereto, what is the remedy of the complainants? In Barney v. City of New York, 193 U. S. 430, 438, 24 Sup. Ct. 502, 503, 48 L. Ed. 737, Mr. Chief Justice Fuller, giving the opinion of the court, no dissent, says, citing cases:

"And the principle is that it is for the state courts to remedy acts of state officers done without the authority of or contrary to state law."

The state of New York in creating the city of Utica and conferring upon it general power to supply itself with water for public purposes, or in authorizing the making of a contract between it and the Utica Waterworks Company, has not descended to details or prescribed the terms of such contract or contracts, and, if the city has made an illegal or improvident and oppressive contract, it has done so "without the authority of state law," and "it is for the state courts to remedy acts of state officers (the common council) done without authority of or contrary to state law." If on appeal to such courts the illegal acts done in violation of the rights of the citizens of. Utica under the pro-

visions of the Constitution of the United States are upheld as legal and valid, then the state has adopted them, and they become its acts, and an appeal may be had to the courts of the United States.

The contract complained of is found in full in Risley v. City of Utica (C. C.) 168 Fed. 737, 741, 742, and it is not necessary to insert it here. This contract was made in 1868, when conditions were vastly different from what they are to-day. Complaint was made by the complainant, Risley, that he had real property with buildings thereon in said city valued at $2,000, and on which he was annually taxed and had heretofore paid taxes to defray the expense of water furnished under said contract for the extinguishment of fires, but that he had been afforded no protection whatever, and that the city had declined to lay mains or pipes to convey water to the vicinity of his property, the nearest being something like a mile away, and that he was being deprived of his property without due process of law, and that such levy and collection of taxes from him and all others similarly situated was illegal and in violation of his and their constitutional rights under the fourteenth amendment referred to. He had refused to pay his taxes. On demurrer this court in the case last cited held that the demurrer must be sustained, as the amount in controversy was far less than $2,000, being in fact less than $22. Permission to amend was given, and, as the suit was brought by Risley in his own behalf and in behalf of all others similarly situated, others came in and joined in an amended bill in which some of the old allegations were dropped and many new ones inserted. The new complainants have no complaint that they are not afforded full protection against fires. They own, and for many years have owned, taxable property in said city and have been assessed for taxes and, without protest, have paid their taxes, including their proportion of the amount included annually to pay the Consolidated Company for the water furnished by it for fire protection purposes; the amount to be paid and collected by tax and paid being ascertained according to the terms of said contract. The amended bill also contained allegations already referred to and the further allegations in substance that the Consolidated Company had laid mains and pipes outside the city of Utica, and that in fixing the amount to be paid for water supply the cost of these mains had been included and the 7 per cent. mentioned in the contract figured and included in the tax levy with the assent and by the acts of the taxing officers of the city of Utica.

The proofs show that the city of Utica, since the making of the contract mentioned, has been extended so as to include a portion of the town of New Hartford, and that the Consolidated Company, being the owner of the mains and pipes theretofore laid in said territory added to the city, has made the same charge on the same basis for water furnished for fire purposes in said added territory. The water has been furnished, and the city has had the benefit of it. The mains, etc., belong to the company, and it was a matter of agreement between the city and the Consolidated Company as to compensation and the mode of ascertaining what such compensation should be. If there was and is no law of the state authorizing this action, then it was the act of

the city officers, or state officers clothed by the state with the power of taxation, done "without the authority of state law," and "it is for the state courts to remedy acts of state officers done without authority of or contrary to state law." If there is a state law authorizing such a contract with all its terms and modes of ascertaining the compensation to be paid, it has not been called to my attention, and, if such law be in existence, its constitutionality is not challenged, for it has not been alleged or proved. The claim is that there is no law of the state authorizing such a contract, and it follows that the claim is that the officers of the city of Utica are acting "without authority of state law." It also appears that in laying mains or conduits for water, and in order to furnish a supply of water for the extinguishing of fires, it was more convenient, as well as reasonably necessary, to lay some 700 feet of such mains in and along a street on the boundary line of the city but just outside such line. The cost of this main has been included in getting at the cost of mains and figuring the amount to be paid for water. How this act of placing its own conduits or mains just outside the city line for conducting water to suitable points in the city for fire purposes constitutes an invasion of the constitutional rights of the complainants or of any citizen or taxpayer of the city of Utica I am unable to see. The vice of the contract is in the mode and manner of getting at or ascertaining the compensation to be paid by the city, and consequently by its taxpayers, and the ignoring of the value of the water furnished and the cost to the company of furnishing it.

This contract binds the company:

(1) To furnish water for the city for the extinguishment of fires and to extend its pipes and conduits to certain streets designated on a certain map and to provide suitable reservoirs for water for such purpose and, if requested, to extend its pipes and conduits.

(2) To furnish a supply of water for the city hall and other buildings occupied by the city for municipal purposes without payment of water rent.

(3) To erect six fountains and supply same with water for drinking purposes, not including horses, cattle, etc., without charge for the water; but the city to pay the entire expense of procuring, erecting, putting down, and connecting the fountains.

Summarized, the Utica Waterworks Company was to provide reservoirs for water, extend its pipes and conduits to such streets as the city should demand, furnish water for the extinguishment of fires and to the buildings occupied for municipal purposes and to six fountains for drinking purposes. For such water for such purposes the city was to pay $10,000 annually; also one-half of all taxes on said company or its works or property in the city and "taxes thereon in excess of the sum of $1,000"; also 7 per cent. on the cost of all extensions of pipes and mains. The city to put in and keep in repair all hydrants and keep same in repair at its own expense.

From the recitals and certain other conditions in the contract, it is evident that the waterworks company was then engaged in providing reservoirs, etc., and that the city was anxious to encourage the enter-

prise so as to secure water for fire purposes. No time is fixed for the termination of the contract, and in terms it is not perpetual unless it is made so by the following:

"And the city of Utica agrees that when the said company shall have furnished by the said reservoirs and by the said pipes and conduits a supply of water in manner and for the purpose aforesaid and so long as they shall continue to supply sufficient water for said purpose it will pay therefor to the said company," etc.

The company did not agree to supply water for any length of time, but the city agrees to pay at the rate and on the basis stated so long as the company supplies water. These same pipes and conduits convey the water of the company for supplying the citizens of Utica for which they pay at certain established rates. The city is a customer, but pays for its supply on an entirely different basis.

I have no doubt that the city of Utica, assuming that the said contract was assignable and duly assigned to the Consolidated Water Company and is binding during the election or consent of both parties to operate under it, may terminate such contract on giving due and reasonable notice of its election so to do. It is not a contract that can be enforced in perpetuity by either party. There is no word or clause in it that binds the company to continue to furnish water under it, and I do not think the city could compel specific performance for all time. Neither can the company. It is not mutually enforceable. Its continuance is optional, but to terminate same notice must be given and a reasonable time fixed when such termination shall take effect. Chattanooga, R. & C. R. Co. v. Cincinnati, N. O. & T. P. R. Co. et al. (C. C.) 44 Fed. 456, 458; Western Union Tel. Co. v. Pennsylvania Co. (C. C.) 125 Fed. 67, 71; Jones v. Newport News Co., 65 Fed. 736, 13 C. C. A. 95 (op. by Taft, C. J.); Texas & Pac. R. Co. v. Marshall, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385; 3 Page on Contracts, § 1361, p. 2110; Savage v. Surgical Association, 59 Mich. 400, 26 N. W. 652; Philadelphia, etc., R. Co. v. River Front R. Co., 168 Pa. 357, 31 Atl. 1098; Quin v. Distilling Co., 171 Mass. 283, 50 N. E. 637; Echols v. New Orleans R. Co., 52 Miss. 610, cited and approved 125 Fed. 71.

In 3 Page on Contracts, p. 2110, § 1361, it is said:

"If no time is fixed by the contract for its duration, and the contract from its nature is one which might last indefinitely, either party may at his option terminate such contract. * * * A reasonable notice of the exercise of such option must be given," etc.

The complainants have given evidence showing that under present conditions the price paid by the city for water for the purposes mentioned is excessive, at least five or more times what it should be or what is fair and reasonable and would afford a fair return and compensation to the Consolidated Company for the service rendered. This of course operates unjustly on the taxpayers of the city of Utica, but it does not follow that this court has jurisdiction of an action brought by certain taxpayers of the city of Utica to cancel the contract, restrain operations under it, and collect of the city or company the amount of taxes paid without protest, assessed, levied, and collected in years gone by to pay the sums agreed to be paid for water for such purposes.

It appears:   (1) That the city had and has no water supply of its own; (2) that it made the contract before described; (3) that it was assigned or attempted to be assigned as stated; (4) that both the city and Consolidated Company have recognized the contract as in force between them; (5) that the Consolidated Company has furnished the water and extended its pipes and conduits as agreed and rendered bills therefor; (6) that the city has accepted the service, audited the bills, levied and assessed and collected the taxes to pay same, and that the complainants, except Risley for two years, have paid their taxes without protest; (7) that the sum so agreed to be paid and paid for such service is excessive and, we will say, unjust; (8) the contract is one the city may terminate at any time on giving reasonable notice; (9) Risley, the original complainant, asks to discontinue; (10) the other complainants ask to have the contract declared void, one which, in its execution, violates the rights of all taxpayers and is confiscatory of their property, and prays that its further execution be enjoined, and also ask to recover all taxes paid under it; (11) the city of Utica files a cross-bill and asks to have the contract declared nonassignable, nonenforceable, etc., and really joins in the prayer for relief.

On the argument the Consolidated Company offered to cancel the contract and make a new one.   The city insists on pressing this suit to a termination.   The Consolidated Company denies jurisdiction in this court as stated.

It seems to me that the question is:   Do these facts present a federal question?   The authorities of the city of Utica, given by the state the power to make a contract for a supply of water for municipal purposes and to tax the taxable property of the city· to pay for the same, has made and continued in force from year to year a contract, or has made a continuing and perpetual .contract, for a supply of water which is unreasonable and provides for an excessive compensation to be paid the Consolidated Company.   The state itself has not approved or sanctioned this contract by its legislative, executive, or judicial authority, unless the authorities of the city of Utica in doing what they have done without express authority of the Legislature to do those particular things have acted for the state so that it can be said such acts have been done by the state itself.

In Chicago, Burlington, etc., R. v. Chicago, 166 U. S. 226, 233, 17 Sup. Ct. 581, 583, 41 L. Ed. 979, Mr. Justice Harlan, in giving the opinion of the court, said:

"It·is not contended, as it could not be, that the Constitution of Illinois deprives the railroad company of any right secured by the fourteenth amendment. For the state Constitution not only declares that no person shall be deprived of his property without due process of law, but that private property shall not be taken or damaged for public use without just compensation. But it must.be observed that the prohibitions to the amendment refer to all the instrumentalities of the state, to its legislative, executive, and judicial authorities, and, therefore, whoever by virtue of public position under a state government deprives another of any right protected by that amendment against deprivation by the state, 'violates the constitutional inhibition; and as he acts in the name and for the state, and is clothed with the state's power, his act is that of the state.' This must be so, or, as we have often said, the constitutional prohibition has no meaning and 'the state has clothed one of its agents with power to annul or evade it.' Ex parte Virginia,.100 U. S. 339, 346, 347

[25 L. Ed. 676]; Neal v. Delaware, 103 U. S. 370 [26 L. Ed. 567]; Yick Wo v. Hopkins, 118 U. S. 356 [6 Sup. Ct. 1064, 30 L. Ed. 220]; Gibson v. Mississippi, 162 U. S. 565 [16 Sup. Ct. 904, 40 L. Ed. 1075]. These principles were enforced in the recent case of Scott v. McNeal, 154 U. S. 34 [14 Sup. Ct. 1108, 38 L. Ed. 896], in which it was held that the prohibitions of the fourteenth amendment extended to 'all acts of the state, whether through its legislative, its executive, or its judicial authorities'; and, consequently, it was held that a judgment of the highest court of a state, by which a purchaser at an administration sale, under an order of a probate court, of land belonging to a living person who had not been notified of the proceedings, deprived him of his property without due process of law contrary to the fourteenth amendment."

In New Orleans Waterworks Company v. Louisiana S. R. Co., 125 U. S. 18, 30, 31, 8 Sup. Ct. 741, 747, 748, 31 L. Ed. 607, the court, per Mr. Justice Gray, considering the clause of the Constitution which declares that no state shall pass any law impairing the obligation of contracts, said:

"In order to come within the provision of the Constitution of the United States which declares that no state shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by a law of the state. The prohibition is aimed at the legislative power of the state, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals.

"This court, therefore, has no jurisdiction to review a judgment of the highest court of a state, on the ground that the obligation of a contract has been impaired, unless some legislative act of the state has been upheld by the judgment sought to be reviewed. The general rule, as applied to this class of cases, has been clearly stated in two opinions of this court, delivered by Mr. Justice Miller. 'It must be the Constitution or some law of the state, which impairs the obligation of the contract, or which is otherwise in conflict with the Constitution of the United States; and the decision of the state court must sustain the law or Constitution of the state, in the matter in which the conflict is supposed to exist; or the case for this court does not arise.' Railroad Co. v. Rock, 4 Wall. 177, 181 [18 L. Ed. 381]. 'We are not authorized by the judiciary act to review the judgments of the state courts, because their judgments refuse to give effect to valid contracts, or because those judgments, in their effect, impair the obligation of contracts. If we did, every case decided in a state court could be brought here, where the party setting up a contract alleged that the court had taken a different view of its obligation to that which he held.' Knox v. Exchange Bank, 12 Wall. 379, 383 [20 L. Ed. 287].

"As later decisions have shown, it is not strictly and literally true that a law of a state, in order to come within the constitutional prohibition, must be either in the form of a statute enacted by the Legislature in the ordinary course of legislation, or in the form of a Constitution established by the people of the state as their fundamental law. * * *

"So a by-law or ordinance of a municipal corporation may be such an exercise of legislative power delegated by the Legislature to the corporation as a political subdivision of the state, having all the force of law within the limits of the municipality, that it may properly be considered as a law, within the meaning of this article of the Constitution of the United States.

"For instance, the power of determining what persons and property shall be taxed belongs exclusively to the legislative branch of the government, and, whether exercised by the Legislature itself, or delegated by it to a municipal corporation, is strictly a legislative power. United States v. New Orleans, 98 U. S. 381, 392 [25 L. Ed. 225]; Meriwether v. Garrett, 102 U. S. 472 [26 L. Ed. 197]. Accordingly, where the city council of Charleston, upon which the Legislature of South Carolina, by the city charter, had conferred the power of taxing persons and property within the city, passed ordinances assessing a tax upon bonds of the city, and thus diminishing the amount of interest which it had agreed to pay, this court held such ordinances to be laws impairing the

obligation of contracts, for the reason that the city charter gave limited legislative power to the city council, and, when the ordinances were passed under the supposed authority of the legislative act, their provisions became the law of the state. Murray v. Charleston, 96 U. S. 432, 440 [24 L. Ed. 760]. See, also, Home Ins. Co. v. City Council of Augusta, 93 U. S. 116 [23 L. Ed. 825]."

If this last-cited case is applicable here, we inquire what law of the state of New York has authorized the making of a contract by the city of Utica which is virtually confiscatory of the property of its citizens. The acts done have not been pronounced valid and legal by the courts of the state of New York. The taxing power has been exercised to impose and collect an excessive tax; but the complaint is not of error in determining what persons and property shall be taxed (assuming that Mr. Risley is out of the case as a complainant, he insisting that he could not be taxed at all for fire purposes), but in levying and collecting an excessive and unjust tax—one amounting to confiscation of property. While it is decided that determining who and what property are liable to be taxed is a legislative act, it is not held that in making and executing a contract and assessing, levying, and collecting a tax to pay the consideration agreed to be paid thereby the authorities of a municipal corporation are performing a legislative act. In Murray v. Charleston, 96 U. S. 432, 440, 24 L. Ed. 760, the city council determined to assess a tax on certain bonds of the city, and by so doing diminished the amount of interest the city had agreed to pay. This was held to be a legislative act of the council and the act of the state because it had conferred on the council the power of taxing persons and property within the city. But in that case the state court had upheld the power, and the decision of the state court was appealed from. The court held:

"Wherever rights, acknowledged and protected by the Constitution of the United States, are denied or invaded by state legislation, which is sustained by the judgment of a state court, this court is authorized to interfere."

In City R. Co. v. Citizens' Street R. Co., 166 U. S. 557, 17 Sup. Ct. 653, 41 L. Ed. 1114, both parties were citizens of Indiana, and the suit was brought in the Circuit Court of the United States. The common council of the city of Indianapolis passed an ordinance authorizing the Citizens' Street Railroad Company to lay tracks on designated streets with the right to operate for 30 years, which time was subsequently extended to 37 years, and the ordinance provided that:

"During such time the city authorities were not to extend to other companies privileges which would impair or destroy the rights so granted."

The Citizens' Company acted on the ordinance and made great outlay in the erection of buildings, etc. The city authorities, claiming that the right would expire in 30 years from the original grant, granted to the City Railway Company the right to lay tracks on many of the streets on which the Citizens' Company had laid its tracks, and suit was brought to enjoin the City Company from disturbing, etc. The jurisdiction of the court was upheld. The case seems to settle the proposition that the common council of a city given general power over certain matters represents the state, and that its acts are the acts of the state, unless, of course, forbidden by the law of the state. In

Penn. M. L. Ins. Co. v. Austin, 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed. 626, the last-cited case is approved, and the court also said:

"Not only were the averments of the bill as to the invalidity of the state law adequate, but so also were the allegations as to the nullity of the city ordinances. These ordinances were but the exercise by the city of a legislative power which it assumed had been delegated to it by the state, and were, therefore, in legal intendment the equivalent of laws enacted by the state itself."

In Spring Valley Water Co. v. City and County of San Francisco et al. (C. C.) 165 Fed. 657, it was held:

"Whether rates to be charged by a water company fixed by a municipal ordinance under constitutional or statutory authority are reasonable or unreasonable is a judicial question, and the company has the right to invoke the jurisdiction of a federal court to determine whether such rates are such as to deprive it of its property without due process of law." .

If this is so, it would seem clear that the taxpayers of the city ought to have the right to invoke the jurisdiction of a federal court to determine whether such rates, or the price to be exacted from them by way of taxation, are such as to deprive them of their property without due process of law. The rights of the taxpayers of a municipality paying for the water used for municipal purposes ought to be as sacred in the eye of the law as those of the water company furnishing the water. There is, however, a wide difference between the power of the officers of a municipality to agree with a water company on the sum to be paid it for a supply of water for a given public purpose and the power to fix absolutely the sum it shall charge and receive for such a supply. The last is clearly a legislative act and equivalent to an act of the Legislature itself. The first is merely the execution of the power given by the Legislature to make a contract, and, if it has the power to incur the obligation, it has the power to raise the money by tax to discharge it. The power to tax is inherent in a municipal corporation duly created, whether expressly granted or not. Of course, the Legislature can regulate it and confer it on any specified officers, and thus limit the exercise of the power by the municipality. If a municipal corporation has the general power to make a contract for a supply of water for the extinguishment of fires, and it makes the contract, but in so doing agrees to pay an exorbitant sum, and having the power to tax for the payment of the sum agreed to be paid imposes such tax, may taxpayers maintain a suit in equity to restrain the execution of the contract and the collection of such taxes? And if such taxes have been collected, paid without protest, may the taxpayers recover the taxes paid? If such suit may be maintained, may it be maintained in the Circuit Court of the United States for the Northern District of New York; all of the parties being citizens of the state of New York and of said district? Clearly not under the statute unless the amount involved is upwards of $2,000 exclusive of interest and costs. The amount involved is not measured by the actual recovery, but by the amount claimed, provided it is claimed in good faith and is not merely a colorable claim to give the court jurisdiction.

The contention of the Consolidated Company here is: First, that the complainants (aside from Risley) having paid their taxes volun-

tarily cannot recover them back; and, second, that in no event can they recover more than the sum paid on account of taxes for fire extinguishing purposes, and that so estimated the amount is far less than $2,000. On the other hand, the complainants contend that the suit is really in the interest of all the taxpayers of the city of Utica, and that the sum in actual dispute is the entire tax for fire and municipal purposes for two years, amounting to something like $80,000. They contend that this is the claim made, and made in good faith, and that it is not colorable or made for the purpose of giving this court jurisdiction; that the sum collected and now held in the city treasury, some $80,000, and claimed by the Consolidated Company, is the sum in dispute. The city of Utica, having made the contract and having levied and collected the tax for the purpose of paying for the water for fire and said municipal purposes, now interposes the same claim.

It is said that the city of Utica, having incurred the obligation and having assessed, levied, and collected these taxes, the $80,000, or thereabouts, to pay the Consolidated Company, cannot now maintain a suit to enjoin the payment of the money to that company, and that the complainants, aside from Risley, having voluntarily paid their taxes, can neither recover them nor enjoin the payment thereof to the company with those paid by other taxpayers to said city. The law of the state of New York and the charter of the city of Utica make all taxes a lien on real estate, and, if such taxes are not paid, the property may be sold. But no such coercive measures were used in this case. No one, except Risley, protected or declined to pay, and the taxes were paid voluntarily, unless it can be truly said that when taxes are made a lien on real estate payment without protest is such coercion that they may be recovered back, if illegally assessed and levied, and constitutes an involuntary payment. I am cited to People ex rel. Am. Nat. Bank v. Purdy et al., as Commissioners, 196 N. Y. 270, 89 N. E. 838, where it was held that:

"Payment under the compulsion of a statute making a tax a direct lien upon shares of stock in a bank is an involuntary payment as to stockholders."

In Ætna Ins. Co. v. Mayor, 153 N. Y. 331, 339–341, 47 N. E. 593, the same doctrine is held. If the authorities imposing a tax are without jurisdiction to impose it, and it is made a lien on the property, and thus hampers the ownership, and follows it when transferred, and there is no escape except to institute a proceeding to annul the tax and prove such want of jurisdiction, it would seem that, if the facts are known to the party against whom the tax is assessed, he should be allowed to protest and then pay and then sue and recover back. And in the case first cited it was held that when the bank pays for the stockholders no protest was necessary. But this is not a case where the taxing officers of the city of Utica acted without jurisdiction. By far the greater part of the taxes for city purposes included in the same assessment and collection were legal, and no complaint is made. The only complaint as to the tax for fire purposes is that it was excessive and confiscatory. There is no evidence that any compulsion whatever was used in the collection; there was no refusal to pay, and no seizure or detention of property or advertisement for sale. In Chesebrough v.

United States, 192 U. S. 253, 24 Sup. Ct. 262, 48 L. Ed. 432, Mr. Chief Justice Fuller, in giving the opinion of the court, said:

"The rule is firmly established that taxes voluntarily paid cannot be recovered back, and payments with knowledge and without compulsion are voluntary. At the same time, when taxes are paid under protest that they are being illegally exacted, or with notice that the payer contends that they are illegal and intends to institute suit to compel their repayment, a recovery in such a suit may, on occasion, be had, although, generally speaking, even a protest or notice will not avail if the payment be made voluntarily, with full knowledge of all the circumstances, and without any coercion by the actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment, over the person or property of the party making the payment, from which the latter has no other means of immediate relief than such payment. Little v. Bowers, 134 U. S. 547, 554 [10 Sup. Ct. 620, 33 L. Ed. 1016]; Railroad Company v. Commissioners, 98 U. S. 541, 544 [25 L. Ed. 196]; Radich v. Hutchins, 95 U. S. 210 [24 L. Ed. 409], citing Brumagim v. Tillinghast, 18 Cal. 265 [79 Am. Dec. 176], a case in respect of stamps purchased, in which the subject is discussed by Mr. Justice Field, then Chief Justice of California."

See, also, Cooley on Taxation (2d Ed.) p. 809; Dillon on Municipal Corporations (3d Ed.) §§ 944-946; Yates v. Royal Ins. Co., 200 Ill. 202, 65 N. E. 726.

The case at bar is more like Railroad Company v. Commissioners, 98 U. S. 541, 25 L. Ed. 196, as in New York no demand for taxes is required, but notice is given of times and a place where payment is to be made. It seems to me an embarrassing doctrine to hold that taxpayers of a municipality may pay their taxes with knowledge of all the substantial facts and without protest or notice of intent to recover, and then, when the taxes are all in and ready to be paid to the parties entitled thereto under contracts with the city, maintain a suit and an injunction to prevent the payment of the moneys so collected and to recover the taxes paid in. And it seems equally embarrassing to hold that a city may make a contract, verbal or in writing, incur an obligation under it, collect the money to pay the consideration, and then, there being no fraud or mistake of fact, either sue or join in a suit to annul the contract or be relieved from paying over the money. But, if so, may several taxpayers, each having a separate demand to recover back the taxes paid by him, collected illegally we will say, unite in one suit, and thus by aggregating their demands confer jurisdiction on the Circuit Court of the United States? It seems not. Each complainant has a separate and distinct demand in which the others are in no way interested. True, the claim of each arises out of the same alleged wrong, but the one has no interest in the recovery of the other. It seems to me that the case is within the principle enunciated in the following cases: Northern Pac. R. Co. v. Walker, 148 U. S. 391, 392, 13 Sup. Ct. 650, 37 L. Ed. 494; Walter v. Northeastern R. Co., 147 U. S. 370, 373, 13 Sup. Ct. 348, 37 L. Ed. 206; Fishback v. Western Union, etc., 161 U. S. 96, 16 Sup. Ct. 506, 40 L. Ed. 630; Seaver v. Bigelow, 5 Wall. 208, 18 L. Ed. 595; Russell v. Stansell, 105 U. S. 303, 26 L. Ed. 989.

In Walter v. Northeastern R. Co., supra, Mr. Justice Brown, giving the opinion of the court, said:

"It is well settled in this court that when two or more plaintiffs, having several interests, unite for the convenience of litigation in a single suit, it can only be sustained in the court of original jurisdiction, or on appeal in this court, as to those whose claims exceed the jurisdictional amount; and that when two or more defendants are sued by the same plaintiff in one suit the test of jurisdiction is the joint or several character of the liability to the plaintiff. This was the distinct ruling of this court in Seaver v. Bigelow, 5 Wall. 208 [18 L. Ed. 595]; Russell v. Stansell, 105 U. S. 303 [26 L. Ed. 989]; Farmers' Loan & Trust Co. v. Waterman, 106 U. S. 265 [1 Sup. Ct. 131, 27 L. Ed. 115]; Hawley v. Fairbanks, 108 U. S. 543 [2 Sup. Ct. 846, 27 L. Ed. 820]; Stewart v. Dunham, 115 U. S. 61 [5 Sup. Ct. 1163, 29 L. Ed. 329]; Gibson v. Shufeldt, 122 U. S. 27 [7 Sup. Ct. 1066, 30 L. Ed. 1083]; Clay v. Field, 138 U. S. 464 [11 Sup. Ct. 419, 34 L. Ed. 1044]."

It is quite true that the complainants go back to about 1900 and show the taxes paid for fire protection purposes under the contract for all the succeeding years, and thus make an aggregate paid in excess of $2,000. But I think it self-evident that no such recovery can be had. Laches in seeking a remedy and enforcing it, if nothing more, would prevent such a recovery.

In Russell v. Stansell, supra, it was held:

"Where the land within a particular district was assessed for taxation, each owner being liable only for the amount wherewith he was separately charged, and the bill of complaint, filed by a number of them, praying for an injunction against the collection of the assessment, was dismissed, and they appealed here, held, that the several amounts cannot be united to make up the sum necessary to give this court jurisdiction."

And in Seaver v. Bigelow, supra, it was held:

"In a creditor's bill, several creditors joining, to set aside a conveyance of property as fraudulently made, this court has no jurisdiction on appeal if the judgment of the creditor appealing do not exceed $2,000. The fact that the fund in litigation exceeds it is not sufficient."

Russell v. Stansell, supra, seems quite conclusive.

I have but little doubt of the right and duty to dismiss for want of jurisdiction at this stage of the case, and it seems to me that if the case were now finally submitted it would be my duty to dismiss. I do not see how a further expenditure of time and money, unless it be on appeal, can avail anything to the complainants or to the city. I cannot agree with the contention that the $80,000 collected and now held by the city constitutes or is to be treated as a trust fund. The allegations of the amended bill upon which the demurrer was overruled are not sustained by evidence.

Risley desires to discontinue, and he may do so as to himself without costs. As to the other complainants, including the city of Utica, in the cross-bill, the suit is dismissed for want of jurisdiction, without costs, and the injunction dissolved.